THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10
11
12
13
14
15

| | |
|---|---|
| GRANITE STATE INSURANCE COMPANY, | CASE NO. C16-0795-JCC |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. | |
| MENTAL HEALTH RISK RETENTION GROUP, | |
| Defendant. | |

16    This matter comes before the Court on Plaintiff's partial motion for summary judgment

17  (Dkt. No. 9). Having thoroughly considered the parties' briefing, the relevant record, and the

18  parties' oral arguments, the Court hereby GRANTS the motion for the reasons explained herein.

19  **I.    BACKGROUND**

20
21    Plaintiff, Granite State Insurance Company, contracted to provide commercial general

22  liability coverage and professional liability coverage to Sound Mental Health ("SMH") from

23  January 1, 2013 to January 1, 2014 ("Granite State Policy"). (Dkt. No. 1 at 3.)

24    Defendant, Mental Health Risk Retention Group, contracted to provide commercial

25  general liability coverage and professional liability coverage to SMH from January 1, 2010 to

26  January 1, 2011 ("MHRRG Policy"). (*See* Dkt. No. 1 at 2.)

Plaintiff asserts equitable subrogation, contractual subrogation, and contribution claims against Defendant, arising out of the death of Shannon Harps and the lawsuits that were subsequently filed against SMH and King County for their negligent provision of mental health care services to James Anthony Williams.

**A.  The Lawsuits**

Williams murdered Harps on December 31, 2007. (Dkt. No. 1 at 3.) At the time of her murder, Williams was a criminal defendant whom King County had released into the community on probationary status. (Dkt. No. 1 at 4.) King County had issued a "Substance Abuse/Mental Health Treatment Services" contract ("Services Contract") to SMH to provide mental healthcare services on behalf of King County, and Williams was to receive such services from SMH. (*Id.*) The Services Contract stated that SMH would "protect, defend, indemnify, and hold harmless the [King] County . . . from any and all costs, claims, judgments, and/or awards of damages, arising out of, or in any way resulting from, the negligent acts or omissions of [SMH] . . . in its performance and/or nonperformance of its obligations under" the Services Contract. (Dkt. No. 12 at 9.) Additionally, the Services Contract stated that  King County would "protect, defend, indemnify, and hold harmless [SMH] . . . from any and all costs, claims, judgments, and/or awards of damages, arising out of, or in any way resulting from, the sole negligent acts or omissions" of King County. (*Id.*)

On December 28, 2010, Harps's parents filed a lawsuit in King County Superior Court against SMH and others ("Harps Lawsuit I") alleging that SMH was negligent in its provision of mental healthcare services on behalf of King County and that this negligence resulted in Harps's death. (Dkt. No. 1 at 4.) SMH tendered Harps Lawsuit I to Defendant for defense and indemnity under the MHRRG Policy. (Dkt. No. 12 at 6.) Defendant agreed to defend SMH in Harps

ORDER GRANTING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

Lawsuit I. (*Id*.)

On February 22, 2011, the Harps filed a second lawsuit against the State of Washington and King County in Pierce County Superior Court ("Harps Lawsuit II") alleging that King County "contracted with third parties or otherwise assumed the duty to provide" certain "mental health, drug and alcohol abuse, and housing services" to Williams under the "Dangerous Mentally Ill Offender Program of the State of Washington." (Dkt. No. 1-4 at 3.) The lawsuit alleged that the County "negligently or with gross negligence failed to supervise him or put him or keep him on inpatient or incarcerated status," and "failed to adequately train or supervise their agents, employees, or contractors in their duties," resulting in Harps's death. (*Id*. at 3–4.) In January 2012, the court consolidated Harps Lawsuit I and Harps Lawsuit II in Pierce County. (Dkt. No. 9 at 7.)

On October 3, 2013, while the consolidated lawsuit was pending, King County requested that, pursuant to the Services Contract, SMH defend and indemnify the County for its liability in the consolidated case. (Dkt. No. 9 at 7.) SMH tendered this demand to Defendant. (*Id*.) In December 2013, Defendant sent a letter to King County denying SMH's tender for coverage. (*See* Dkt. No. 10-1 at 2.) This letter stated that the claims were "for the County's independent, active negligence and not vicarious liability of Sound Mental Health." (*Id*.) Additionally, the letter stated that, "while the claim, as that term is defined, was made against King County within the policy period it was not reported to MHRRG within the policy period," thus the reporting requirement was not met, and King County's request for indemnity and defense was denied. (*Id*. at 5.)

Following Defendant's denial of coverage, SMH tendered King County's claim for defense and indemnity to Plaintiff, SMH's current insurer for professional services and general

liability coverage, under the Granite State Policy. (Dkt. No. 9 at 7.) Plaintiff similarly refused to defend or indemnify King County in Harps Lawsuit II, arguing that the lawsuit alleged the sole negligence of King County, and thus was not covered by the Granite State Policy. (Dkt. No. 15 at 71.) In January 2014, King County and SMH settled the claims alleged in the consolidated lawsuit. (Dkt. No. 9 at 8.) Defendant paid the settlement on behalf of SMH. (Dkt. No. 9 at 8.) King County paid to settle its portion of the lawsuit. (*See* Dkt. No. 10-2 at 2.)

Subsequently, on November 24, 2014, King County filed a lawsuit against SMH ("the King County Lawsuit") in King County Superior Court, alleging that SMH had been negligent in its provision of mental healthcare services to Williams, and that this negligence resulted in Harps's death. (Dkt. No. 10-5 at 11.) Additionally, the lawsuit alleged that, pursuant to the Services Contract, SMH had a duty to defend and indemnify King County for Harps Lawsuit II, and that it breached the Services Contract when it refused to do so. (*Id.* at 13.) Thus, the King County Lawsuit sought damages in the amount that King County paid to settle its portion of the consolidated lawsuit, plus interest, attorneys' fees, and costs incurred. (Dkt. No. 10-5 at 14.) SMH did not tender this lawsuit to Defendant for defense and indemnity under the MHRRG Policy. (Dkt. No. 12 at 7.) Instead, SMH tendered this lawsuit to Plaintiff for defense and indemnity under the Granite State Policy. (Dkt. No. 9 at 7.) Plaintiff agreed to defend SMH from King County's claim under a reservation of rights that "advised that the [Granite State] policy provided no coverage to [SMH] for any claims based upon wrongful acts reported to insurers for prior policy periods." (Dkt. No. 10-4 at 2, 6.)

In December 2015, Plaintiff and SMH settled the King County Lawsuit with King County. Pursuant to the settlement agreement, Plaintiff paid $432,500 and SMH paid $90,000 to King County. (Dkt. No. 10-2 at 2.) SMH assigned its rights against Defendant to Plaintiff with

respect to Defendant's wrongful denial of its defense and indemnity obligations to SMH for the King County Lawsuit. (*Id.* at 3.) This assignment included the amounts SMH paid in settlement and for attorneys' fees and expenses. (*Id.*)

## B. MHRRG Policy

Defendant's policy with SMH provided that it would pay the sums that the insured became "legally obligated to pay as damages because of injury as a result of a wrongful act." (Dkt. No. 15 at 148.) The policy further stipulated that it would apply to an injury only if a claim for damages because of the injury was "first made against the insured during the policy period." (*Id.*) Under the policy, a claim seeking damages was deemed to have been made when notice of such claim was received and recorded by any insured, or by Defendant, whichever came first. (*Id.*) The policy further provided that all claims arising out of the same wrongful act would be considered as having been made at the time the first claim was made. (*Id.*) The policy defined a claim as "the receipt of a demand for money or services naming any insured and alleging a wrongful act." (*Id.* at 153.) Further, it defined a wrongful act as "any act, error or omission in the furnishing of professional health care services." (*Id.*) The contract provided that Defendant was not liable to pay for injury for which the insured was "obligated to pay damages by reason of the assumption of liability in a contract or agreement." (*Id.* at 149.) However, this exclusion did not apply to damages that the insured would have been obligated to pay in the absence of a contract. (*Id.*)

## C. The Current Litigation

Plaintiff moves the Court for partial summary judgment against Defendant "to recover costs that are due and owing by" Defendant for Plaintiff's defense and indemnification against the parties' common insured, SMH. Plaintiff seeks four claims for relief: (1) a declaration that

ORDER GRANTING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
PAGE - 5

1   Defendant was obligated under its policy with SMH to defend and indemnify SMH for the King

2   County Lawsuit; (2) recovery of the amount paid in settlement by Plaintiff and, as SMH's

3   assignee, by SMH, in the King County Lawsuit, including defense costs incurred in the defense

4   of that lawsuit under the theory of contractual subrogation, totaling $522,500; (3) the same

5   damages under the theory of equitable subrogation; and (4) contribution from Defendant. (Dkt.

6   No. 9 at 10.) Plaintiff further seeks recovery of *Olympic Steamship*[1] fees and costs. (*Id.*)

7

8   **II.   DISCUSSION**

9       **A.  Legal Standard**

10          Under Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant summary

11   judgment if the movant shows that there is no genuine dispute as to any material fact and the

12   movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether

13   to grant summary judgment, the Court must view the facts and justifiable inferences to be drawn

14   therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, *Inc.*,

15   477 U.S. 242, 255 (1986). In challenging a motion for summary judgment, the nonmoving party

16   "must come forward with 'specific facts showing that there is a genuine issue for trial.'"

17   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R.

18   Civ. P. 56(e)). Specific facts showing that there is a genuine issue for trial must be material to the

19   case. *See Anderson*, 477 U.S. at 248-49. Material facts are facts that may affect the case's

20   outcome. *Id*. There is a genuine dispute about a material fact if sufficient evidence exists for a

21   reasonable jury to find for the nonmoving party. *Id*. The Court should grant a motion for

22   summary judgment when the nonmoving party "fails to make a showing sufficient to establish

23

24

25

26   _____

   [1] *Olympic S.S. Co. v. Centennial Ins. Co*., 811 P.2d 673, 681 (1991).

1  the existence of an element essential to that party's case, and on which that party will bear the

2  burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

3        Federal courts sitting in 28 U.S.C. § 1332 diversity jurisdiction apply state substantive

4  law and federal procedural law. *Gasperini v. Ctr. for Humanities, Inc*., 518 U.S. 415, 427 (1996).

5  In Washington, insurance policies are "interpreted as they would be by the average purchaser."

6  *Hayden v. Mut. of Enumclaw Ins. Co.*, 1 P.3d 1167, 1171 (2000). "Courts liberally construe

7  insurance policies to provide coverage wherever possible." *Bordeaux, Inc. v. Am. Safety Ins. Co*.,

8  186 P.3d 1188, 1191 (2008). "The interpretation of insurance policies is a question of law." *Pub.*

9  *Util. Dist. No. 1 of Klickitat Cty. v. Int'l Ins. Co.*, 881 P.2d 1020, 1025 (1994).

10

11        **B.  Defendant's Duty to Defend & Indemnify**

12        Washington courts have held that an insurer's duty to defend "arises when a complaint

13  against the insured, construed liberally, alleges facts which could, if proven, impose liability

14  upon the insured within the policy's coverage." *Mut. of Enumclaw Ins. Co. v. USF Ins. Co*., 191

15  P.3d 866, 873 (2008). However, the duty to defend "is separate from, and broader than, the duty

16  to indemnify." *Hayden*, 1 P.3d at 1171. While the duty to defend exists "merely if the complaint

17  contains any factual allegations which could render the insurer liable to the insured under the

18  policy," the duty to indemnify "hinges on the insured's actual liability to the claimant and actual

19  coverage under the policy." *Id.* at 1172.

20

21        Before an insurer's duty to defend arises, an insured must "affirmatively inform the

22  insurer that its participation in a claim for coverage is desired." *Mut. of Enumclaw Ins. Co.*, 191

23  P.3d at 873. Thus "duties to defend and indemnify do not become *legal obligations* until a claim

24  for defense or indemnity is tendered." *Id.*

25        The parties dispute whether Defendant had the duty to defend and indemnify King

26

County in Harps Lawsuit II and SMH in the King County Lawsuit. Their dispute turns on whether Harps Lawsuit II and the King County Lawsuit arose from the same wrongful act as Harps Lawsuit I. Harps Lawsuit I was tendered to Defendant within the MHRRG policy period. (Dkt. No. 9 at 6–7.) Thus, if Harps Lawsuit II and the King County Lawsuit arose from the same wrongful act as Harps Lawsuit I, the relation back provision of the MHRRG Policy applies, and both claims were tendered during the MHRRG Policy period. However, if they did not arise from the same wrongful act as Harps Lawsuit I, the relation back provision of the MHRRG Policy is not invoked, and both Harps Lawsuit II and the King County Lawsuit were brought outside the MHRRG's Policy period.

Plaintiff argues that Harps Lawsuit II and the King County Lawsuit lawsuits arose out of the same wrongful act alleged in Harps Lawsuit I—negligence in providing mental healthcare services to Williams. (Dkt. No. 9 at 13.) Thus, according to Plaintiff, the relation back provision of the MHRRG Policy is invoked, the King County Lawsuit was tendered to Defendant within Defendant's policy period, and Defendant is liable to indemnify Plaintiff. (*Id.* at 13.) Defendant, on the other hand, argues that, while Harps Lawsuit I arose out of SMH's negligent furnishing of healthcare services to Williams, Harps Lawsuit II arose out of King County's failure to keep Williams incarcerated and the King County Lawsuit arose out of SMH's breach of its Services Contract with King County. (*Id.* at 26.) According to Defendant, to the extent that the three lawsuits alleged "'wrongful acts,' all three 'wrongful acts' are quite different." (*Id.* at 24.) Consequently, Defendant argues that the relation back provision of its policy does not apply, and Harps Lawsuit II and the King County Lawsuit did not meet the MHRRG Policy's reporting requirement. (*Id.* at 14, 23, 26.)

Alternatively, Defendant argues that because the King County Lawsuit contained "only

one cause of action for breach of contract," and did not "make any allegations of failing to furnish professional healthcare services," it did not allege a wrongful act or make a claim, as defined by the MHRRG Policy. (Dkt. No. 12 at 22.) Finally, Defendant argues that it is not liable to indemnify Plaintiff because the King County Lawsuit was never tendered to Defendant, thus it never received notice of the claim, and because the contractual exclusion in Defendant's policy applied to the King County Lawsuit. (*Id*. at 20, 22.)

In sum, Defendant's duties to defend and indemnify hinges on whether the allegations contained in Harps Lawsuit I, Harps Lawsuit II, and the King County Lawsuit arose out of the same wrongful act, and on whether Defendant' received notice of the respective lawsuits by virtue of the relation back provision of Defendant's contract.

### a.   Same Wrongful Act

The MHRRG Policy defines a claim as "the receipt of a demand for money or services naming any insured and alleging a wrongful act." (Dkt. No. 15 at 153.) The policy further defines a wrongful act as "any act, error or omission in the furnishing of professional health care services." (Dkt. No. 15 at 153.) Contrary to Defendant's assertions, Harps Lawsuit II only partially alleged that King County was negligent for releasing Williams from jail. (*See* Dkt. No. 1-4 at 3.) It also alleged, at least implicitly, that SMH negligently provided the mental healthcare treatment that it had contracted with King County to provide. (*See* Dkt. No. 1-4 at 4) ("These defendants also failed to adequately train or supervise their agents, employees, or contractors in their duties.") Because King County had contracted out the furnishing of healthcare to SMH, its negligence in the provision of healthcare services arose from SMH's negligence. Construing the MHRRG Policy's provisions liberally, the Court concludes that Harps Lawsuit II alleged the same wrongful act as Harps Lawsuit I—negligence in the provision of mental healthcare services

to Williams.

Similarly, although a claim for breach of contract, the King County Lawsuit alleged that SMH was negligent in the provision of healthcare services, and that this negligence led to the death of Harps. At the core of SMH's alleged contractual breach is SMH's failure to indemnify King County for its negligence in the provision of mental healthcare services, as required by the Services Contract. Thus, the King County Lawsuit similarly alleged negligence in SMH's provision of mental healthcare services to Williams, and the King County Lawsuit arises out of the same wrongful act as Harps Lawsuit I. (Dkt. No. 10-5 at 10.)

Because all three lawsuits are predicated on SMH's negligence in the provision of mental healthcare services to Williams, all three arose out of the same wrongful act, as defined by the MHRRG Policy. Further, because the King County Lawsuit alleged the same wrongful act as Harps Lawsuit I, it alleged the same claim, and the King County Lawsuit successfully makes a claim as defined by the MHRRG Policy. Thus, Plaintiff has shown sufficient facts to find that Harps Lawsuit II and the King County Lawsuit were covered by the MHRRG Policy, and Defendant was liable to defend and indemnify King County in Harps Lawsuit II and SMH in the King County Lawsuit.

### b. Relation Back Provision

The plain language of Defendant's contract states that the insurance would apply only if a claim for damages was "first made against the insured during the policy period." (Dkt. No. 15 at 148.) Per the policy, a claim was deemed to have been made when notice of the claim was received. A claim is "the receipt of a demand for money or services naming any insured and alleging a wrongful act," and all claims arising out of the same wrongful act were considered to have been made at the time of the first claim. (*Id.* at 148, 153.) Because Harps Lawsuit II and the

King County Lawsuit arose out of the same wrongful act as Harps Lawsuit I, the relation back provision of the MHRRG Policy applies, and notice of Harps Lawsuit II and the King County Lawsuit was received at the time that the claim under Harps Lawsuit I was made. Additionally, SMH received a request for indemnification for Harps Lawsuit II in 2013 via King County's demand letter—a request which was tendered to Defendant. The Court finds this letter sufficient to notify Defendant that the King County Lawsuit was impending, and the King County Lawsuit was tendered to Defendant.

Defendant received notice of Harps Lawsuit II and the King County Lawsuit via the relation back provision of the MHRRG Policy, thus both lawsuits were successfully tendered to Defendant. Because both lawsuits were tendered to Defendant, Defendant had a legal duty to defend and indemnify King County in Harps Lawsuit II and, subsequently, SMH in the King County Lawsuit.

### C.   Applicability of MHRRG Contractual Exclusion

Additionally, Defendant argues that it is not liable to indemnify Plaintiff because the "MHRRG Policy contained an exclusion for injury for which the insured was obligated to pay damages by reason of the assumption of liability in a contract agreement." (Dkt No. 12 at 22–23.) According to Defendant, the King County Lawsuit "alleged just that; it alleged that SMH was obligated to pay King County's indemnity and defense expenses incurred in the King County Action due to the assumption of that liability in the Contract," and thus the contractual exclusion applied. (*Id*. at 23.) However, the contractual exclusion that Defendant references further stated that the MHRRG Policy did not exclude indemnification coverage where SMH would have been liable without a contractual agreement. (Dkt. No. 15 at 149.)

"Policy ambiguities, particularly with respect to exclusions, are to be strictly construed against the insurer." *Hayden*, 1 P.3d at 1172. Because King County alleged that Harps's death occurred due to SMH's negligence, SMH likely would have been liable even absent its contractual agreement with King County. Strictly construing the policy exclusion against Defendant, the Court finds that the exclusion does not apply in this case, and Defendant remains liable to Plaintiff in this cause of action.

**D.  Theories of Liability**

Plaintiff seeks damages under theories of contractual subrogation, equitable subrogation, and contribution. "Subrogation is an equitable doctrine the essential purpose of which is to provide for a proper allocation of payment responsibility" by facilitating "placement of the financial consequences of loss on the party primarily responsible in law for such loss." *Mahler v. Szucs*, 957 P.2d 632, 640, *order corrected on denial of reconsideration*, 966 P.2d 305 (Wash. 1998). Subrogation may arise in the form of equitable subrogation or contractual subrogation. *Id.*

Equitable subrogation arises when "a person who pays a debt for which another is primarily responsible is subrogated to the rights and remedies of the other." *Truck Ins. Exch. of Farmers Ins. Grp. v. Century Indem. Co.*, 887 P.2d 455, 458 (1995).

Contractual subrogation arises by contract. *Mut. of Enumclaw Ins. Co.*, 191 P.3d at 874. Because it can arise only by agreement, "some jurisdictions have found it to be synonymous with assignment." *Id*. An insurer who receives full contractual assignment of an insured's rights may bring a conventional subrogation claim to enforce those rights. *Id.* at 875.

Similarly, equitable contribution "allows an insurer to recover from another insurer where both are independently obligated to indemnify or defend the same loss." *Mut. of Enumclaw Ins. Co.*, 191 P.3d at 872. In deciding whether one insurer is liable for equitable contribution to

1    another, the Court must determine whether the nonparticipating coinsurer was legally obligated

2    to provide a defense or indemnity coverage for the claim prior to its date of settlement. *Id.*

3         In this case, Plaintiff paid Defendant's liability in the King County Lawsuit. Because all

4    three lawsuits in question resulted from the same wrongful act, Defendant received notice of

5    Harps Lawsuit II and the King County Lawsuit within its policy period. Thus, via the Services

6    Contract, Defendant had a legal obligation to defend and indemnify King County in Harps

7    Lawsuit II and subsequently, to defend and indemnify SMH in the King County Lawsuit. With

8    the settlement of the King County Lawsuit, SMH assigned its rights against Defendant to

9    Plaintiff. Thus, under the theories of contractual subrogation, equitable subrogation, and

10   contribution, Plaintiff is entitled to indemnity for its participation in the settlement of the King

11   County Lawsuit, and for the participation of SMH.

12
     **E.  Additional Discovery**

13        Defendant asserts that if the Court is inclined to grant Plaintiff's motion for partial

14   summary judgment, Defendant should be allowed to "conduct additional discovery to oppose the

15   motion with additional facts and evidence." (Dkt. No. 12 at 26.) Defendant argues that additional

16   discovery "could support an 'unclean hands' and/or 'voluntary payment' defense" to Plaintiff's

17   cause of action. (*Id.*) While Defendant presents evidence indicating that Plaintiff, like Defendant,

18   refused to defend and indemnify King County in Harps Lawsuit II, Defendant fails to articulate

19   how this fact in any way supports an unclean hands or voluntary payment defense. (*See* Dkt. No.

20   15 at 71.) Further, the Court fails to see how additional discovery would serve to negate the

21   underlying fact that, via the terms of the MHRRG Policy, Defendant was liable to defend and

22   indemnify King County and SMH in Harps Lawsuit II and the King County Lawsuit. Thus, the

23   Court deems extra discovery unnecessary in this cause of action.

24

25

26

### III.    CONCLUSION

Harps Lawsuit I, Harps Lawsuit II, and the King County Lawsuit arose out of the same wrongful act. Thus, the relation back provision of the MHRRG Policy applies, and all three claims were tendered to Defendant during the MHRRG Policy period. Because all three claims were tendered to Defendant during the MHRRG Policy period, Defendant had a duty to defend and indemnify SMH in the King County Lawsuit. Accordingly, Defendant is liable to indemnify Plaintiff on the theories of contractual subrogation, equitable subrogation, and contribution for Plaintiff's participation in the King County Lawsuit.

For the foregoing reasons, Plaintiff's motion for partial summary judgment (Dkt. No. 9) is GRANTED.

DATED this 25th day of October 2016.

John C. Coughenour
UNITED STATES DISTRICT JUDGE